(Decided July 9th, 1862.)

---

## Samuel N. Hyde, Joshua S. Inloes and others, *vs.* George H. Ellery and others.

A bill charged that one of the defendants, by false representations as to his solvency and mercantile character, induced the complainant and other merchants in New York, to sell to him, on credit, a large amount of goods, and that the other defendants also imposed upon the complainants by false and fraudulent representations, and by a fraudulent combination between them and the purchaser, for the purpose of defrauding the complainants, and securing their own antecedent debts, obtained, a short time after the purchase, a transfer of the goods from the purchaser to them, and had placed them in the hands of auctioneers to be sold at auction; that the several creditors were unable to use their remedy by *replevin*, except as to a very small amount of goods, because of intermixture and change of marks, rendering it impossible for each to select and identify his goods, and asked for the transfer to be set aside, and for an injunction to restrain the sale. HELD:

1st. That the difficulty of tracing out and identifying the goods, and the multiplicity of suits necessary to get possession of them, after being scattered into numberless hands by a sale at auction, makes it a case for a court of equity to interfere by *injunction*, to prevent a multiplicity of suits.

2nd. The relief sought being to set aside a fraudulent transfer of the goods, made to delay, hinder and defraud, creditors, the injunction was necessary as ancillary to that relief.

Upon appeal from an order granting an injunction, the propriety of the order must be determined upon the merits of the bill, without reference to the answers.

APPEAL from the Circuit Court for Baltimore City.

Appeal, after answer filed from an order of the court below (KREBS, J.) granting an injunction, upon a bill filed September 23rd, 1859, by the appellees against the appellant. The allegations of this bill are sufficiently stated in the opinion of this court.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*P. M'Laughlin,* for the appellants:—The bill makes no case for an injunction. There is no allegation of irreparable loss from the insolvency of Inloes & Co., or Hoffmans & Co., in whose possession the goods were at the time of filing the bill, or any other ground of irreparable injury, without which an injunction will not in such a case issue. The injury may be irreparable, either from the nature of the property injured, or from want of responsibility on the part of the person committing it. But the mere allegation that irremediable damage, or irreparable mischief, will ensue, is not sufficient. To satisfy the conscience of the court, the acts must be stated to show that the apprehension of injury is well founded. But here the remedy at law is adequate, and equity has, therefore, no jurisdiction. There are no sufficient allegations of fraud in the bill, even if fraud alone, without irreparable injury, would authorize an injunction. But there must be both fraud and

irreparable injury:—there is no case to be found in Maryland where an injunction has issued upon a charge of fraud alone. In support of these views, see 13 *Price*, 327, *Izard vs. Colbron;* 3 *Green's Ch. Rep.*, 449, *Kerlin vs. West;* 3 *Paige*, 213, *Hart vs. Mayor, &c.;* 9 *G. & J.*, 468, *Amelung vs. Seekamp;* 2 *Md. Ch. Dec.*, 9, *O'Brien vs. Gibbons;* 4 *Gill*, 34, *Hamilton vs. Ely;* 3 *Md. Rep.*, 489, *Young's Case;* 11 *Md. Rep.*, 365, *Blondheim vs. Moore; Ibid.*, 376, *Rosenberg, et al., vs. Moore;* 16 *Md. Rep.*, 85, *Lewis vs. Levy;* 17 *Md. Rep.*, 310, *State vs Jarrett & Harwood.*

*I. N. Steele*, for the appellees:—The counsel for the appellants misapprehend the grounds on which the jurisdiction of equity is asked for in this case, and his authorities do not apply. Courts of equity have no jurisdiction in cases of trespass and nuisance, except where the remedy cannot be reached by a court of law, and then the *only* remedy sought is an injunction. But, in this case, the principal relief sought by the bill, being the setting aside of a transfer of personal property made to delay, hinder and defraud the creditors of the grantor, the injunction was necessary as ancillary to that relief; without it any useful jurisdiction of the court over the question of the validity of the transfer would be virtually defeated. The difficulty of tracing out and identifying the goods, their actual consumption and destruction by use, and the multiplicity of proceedings which would be necessary to get possession of them after they were scattered into numberless hands by a sale, make it obvious, that a sale of the goods would render a subsequent decree vacating the transfer a mere nullity. Even in a case of a fraudulent conveyance of real estate, courts of equity prohibit the defendant from selling the property until the question of the alleged fraud is disposed of. This case falls within the operation of Art. 16, sec. 35, of the Code, which makes it unnecessary for the creditor to obtain a judgment in order to vacate a conveyance, contract, or other act, as fraudulent against creditors. The creditor is entitled to the

same remedy as if he had obtained a lien by judgment and execution. In support of these views and as fully sustaining the jurisdiction of the court, to grant, and the propriety of granting this injunction, see 1 *Wat. Eden on Inj.*, 35, 36; 2 *Johns. Ch. Rep.*, 202, *Roberts vs. Anderson; Ibid.*, 144, *Wiggins vs. Armstrong;* 9 *Paige,* 297, *Bogert vs. Haight;* 10 *Paige,* 502, *New vs. Bame;* 1 *Md. Ch. Dec.*, 87, *Brown vs. Stewart;* 2 *Md. Ch. Dec.*, 537, *Allen vs. Burke;* 4 *Gill,* 475, *Geiger vs. Green;* 4 *Gill,* 105, *Ricketts vs. Ricketts;* 12 *Md. Rep.*, 1, *Parsons vs. Hughes; Story's Eq.*, secs. 905 to 908, 954; 16 *Md. Rep.*, 77, *Rich vs. Levy;* 7 *Gill,* 366, *Richards vs. Swan;* 14 *Md. Rep.*, 356, *Hubbard vs. Hubbard;* 10 *Md. Rep.*, 500, *Uhl vs. Dillon.*

GOLDSBOROUGH, J., delivered the opinion of this court.

The appeal in this case is taken from an order of the Circuit court for Baltimore city, granting an injunction on the bill of complaint of the appellees, and the rightful exercise of chancery jurisdiction in granting the injunction is to be determined upon the merits of the bill, without reference to the answers of the appellants, filed subsequent to the order. 10 *Md. Rep.*, 96. The appellees allege, that the appellant, Hyde, by a series of misrepresentations as to his solvency and mercantile character, induced them and other merchants in New York, to extend to him credit for a large amount of goods. That they were also imposed on by the statements of Francis Inloes, one of the firm of Inloes & Co., whose representations were false and fraudulent, and known by him to be so, at the time they were made.

That the goods obtained from the appellees, were, within a short time, (some eighteen days,) transferred to Inloes & Co., without any inventory or bill of sale, and immediately placed in the hands of the other appellants, James and Robert Hoffman, to be sold at auction, and if so sold, there would be a heavy sacrifice on the cost of them.

That it was a *fraudulent combination* between the appel-

lants for the purpose of defrauding the appellees and other creditors of Hyde, and designed to secure to Inloes & Co., an alleged claim against Hyde, which the appellees charge was greatly disproportioned to the value of the stock of goods obtained from them by Hyde.

That even as to that portion of said goods, respecting which it might be contended, that the appellees had a specific remedy at law by an action of *replevin*, they were and are unable to avail themselves of this remedy, except as to a very small amount of goods, because the goods sold by them and others, are so mixed together, and such changes have been made in the marks on them, that it is impossible for each complaining creditor to select and identify the goods sold by and belonging to him.

It then appearing, from these allegations in the bill, to which alone we must confine our attention, that the appellees sold the goods to Hyde under the influence of his false representations, and those of Francis Inloes; that the other appellants conspired, by fraudulent combination, to get possession of the goods, to promote their own interests, by applying them, or their proceeds, to the satisfaction of debts *previously due* to them, which debts were greatly disproportioned to the actual value of the goods; that the appellants were wholly regardless of the claims of other creditors, evinced by their precipitate conduct in placing the goods in the hands of auctioneers, to be sold at auction, liable to great sacrifice; that Inloes & Co. well knew the failing condition of Hyde, by admitting, that about the time of his obtaining the goods in question, they lately purchased "a certain amount of Hyde's paper, for the purpose of bolstering up his credit, and had great difficulty in doing so;" we think that a court of equity was the proper tribunal to take cognizance of this case, and that the prohibitory process of an injunction was the proper remedy to arrest the injury apprehended by the appellees.

If the appellants, as charged in the bill, obtained the goods in question, with notice of the fraudulent manner in which

Hyde, *et al.*, *vs.* Ellery, *et al.*

they were obtained, without paying a valuable consideration to Hyde for them, at the time of the transfer, the appellees could avoid their contract of sale, and would be restored to their title to them.

This court have said, in the case of *Ratcliffe vs. Sangston, Hurst & others*, decided at the present term, (*ante*. 390,) "When the consideration for an assignment or transfer, from a fraudulent vendee, is such, that after a reclamation and recovery by the vendor, the assignee or transferree would remain in the same condition as before the assignment or transfer, it is not sufficient. To make such an assignment or transfer valid against the defrauded vendor, something of value, in the way of property or money, should be given or advanced, some service rendered or liability incurred, on the faith and credit of the transfer, and as a present, reciprocal consideration therefor. It follows, that a transfer of goods, by a fraudulent vendee, in consideration of a preexisting debt, confers no title as against the defrauded vendor, who may avoid the sale to the vendee, and recover the goods from the assignee or transferree. 13 *Wend.*, 570. 4 *Duer*, 161. 6 *Duer*, 240. *Powell vs. Bradlee*, 9 *G. & J.*, 220." This would indicate that the appellees had their remedy at law. But when we regard the difficulty in tracing out and identifying the goods, as stated in the bill, and that a multiplicity of proceedings would be necessary to get possession of them, after they were scattered into numberless hands, by a sale at auction, the injury complained of would fall within the well established ground for resorting to a court of equity, to prevent a multiplicity of suits, by the process of injunction. See 12 *G. & J.*, 12; 6 *Johns. Ch. Rep.*, 497.

The relief sought by the appellees being, to set aside a fraudulent transfer of the goods, made to delay, hinder and defraud creditors, the injunction was necessary as ancillary to that relief. And though an injunction may be granted in such a case as is made by the bill, yet it is liable to be dissolved as in other cases, upon the coming in of the answer, if the equity, upon

which it is founded, is sworn away or denied. 1 *Md. Ch. Dec.*, 87.

Whatever, therefore, may be the result on the final hearing, we see no just ground to disturb the injunction granted in this case, and must affirm the order of the Circuit court.

*Order affirmed and cause remanded.*

(Decided July 9th, 1862.)